**In re C. DeMont JUDD Jr., Disciplinary Proceeding.**

**No. 16938.**

Supreme Court of Utah.

May 5, 1981.

1. Utah, 605 P.2d 1230 (1980).

C. DeMont Judd, Jr., pro se.

S. Dee Long, Salt Lake City, for respondent.

CROFT, District Judge:

This case is before this Court for review of the recommendation of the Board of Commissioners of the Utah State Bar that C. DeMont Judd, Jr., (hereinafter "appellant") be suspended from the practice of law for a period of two months. That recommendation and the findings of the Board upon which it was based, dated February 11, 1980, were certified to this Court on March 4, 1980. Appellant filed his notice of appeal for a review of that recommendation on April 2, 1980, together with his designation of the record on appeal. His brief was filed September 12, 1980, and the reply brief of the Utah State Bar was filed November 13, 1980. However, before the filing of the latter brief, appellant addressed a letter dated November 7, 1980, to the Court requesting that the matter be decided on the single brief and without oral argument. No different request was filed by appellant following his receipt of the Bar's brief, no oral argument was heard, and the decision of this Court is based upon the two briefs and the record on appeal.

In his brief, appellant states that he appeals on the grounds that the issues raised by the Bar have been disposed of by this Court in its decisions in *Mitchell v. Mitchell*, No. 14738, an unpublished Per Curiam opinion filed June 8, 1977, and subsequent appeals in the same case. That basis is without merit as disciplinary procedures involving members of the Bar are provided for in Chapter 51, Title 78, Utah Code Annotated 1953, and are not determined by appeal from a ruling in a divorce case.

Appellant's brief states that the relief he seeks on appeal is twofold: (1) a remanding of the case to the Board of Commissioners for a hearing and (2) a reversal of the Board's findings.

As to the request for a remand to the Board for a hearing, the record on appeal discloses that the disciplinary proceedings began with the filing of a letter of complaint dated November 1, 1977, with the Utah State Bar by Gary A. Mitchell, defendant in a divorce case in which appellant was counsel for the plaintiff therein, Lola H. Mitchell. In response to the Mitchell letter, appellant addressed a letter dated December 5, 1977, to the Professional Standards and Discipline Committee of the Utah State Bar responding in detail to the allegations of the Mitchell letter, and in summation stating that all of the "so called improprieties cited by Mr. Mitchell are nothing more than the work of a lawyer representing his client."

Thereafter, a complaint containing four counts was filed by the Ethics and Discipline Committee and a citation was issued directing appellant to appear and file an answer in writing to that complaint within 20 days. The citation stated that if he failed to answer within the time required, appellant's default would be entered and the Commission would proceed to fix the time and date for a hearing of the charges made in the complaint. The citation and a copy of the complaint were served on appellant by registered mail on October 7, 1978. Appellant failed to file an answer or other responsive pleading.

More than six months later, a motion for entry of default and for setting a date for hearing was filed dated April 27, 1979, and a copy was mailed to appellant on that date. An order of entry of default was signed by the Hearing Committee on May 9, 1979, a copy of which was mailed to appellant on

May 18, 1979. That order provided that the default of Judd was thereby entered and a date for a hearing would be set forthwith. Notice of hearing was issued on July 10, 1979, setting the time and place for hearing for July 26, 1979, at 2:00 p. m. at the office of the Utah State Bar. A copy of that notice was mailed to appellant on July 10, 1979. Appellant did not appear at the hearing, made no effort to contact anyone regarding the proceedings and no one appeared as counsel for him. The Hearing Committee took testimony on that date and at a continuance thereof on August 3, 1979, and submitted its findings and recommendations to the Board of Bar Commissioners on November 7, 1979. Based thereon, the Board of Bar Commissioners made its findings and recommendations on February 11, 1980, as mentioned *supra*, which finally brought a response from appellant as he filed his notice of appeal.

In his brief, appellant asserts that upon the filing of the complaint, he retained counsel but nothing was done by that attorney, who later advised appellant he could not continue to act since his partner was a member of the Board of Commissioners of the Utah State Bar. He further asserts that he thereafter retained another attorney, who likewise did not function. At no place in the record does it appear that appellant advised the Committee or Board of Commissioners that a lawyer had been retained to represent him. Appellant's brief further states that "without notice" to him a hearing was held. He does not deny receipt of the complaint and citation, the motion for entry of default and setting of the date for hearing, nor of the order of entry of default, all mailed to him at his established law office address. The notice of hearing was certified as having been mailed to him on July 10, 1979, at the same address.

It is apparent from the record that after his initial response to Mitchell's letter of complaint made on December 5, 1977, appellant did nothing further by way of responding to the established disciplinary procedures.

Under the law,[1] when the Board recommends the suspension of any member of the Bar, this Court may review the action of the Board, inquire into the merits of the case and take any action agreeable to its judgment. Notwithstanding such provisions, appellant has not identified the attorneys he alleges he retained to represent him, has filed no affidavits from such attorneys concerning their retention therein or failure to act, has made no other explanation of his own failure to respond in this important proceeding, and requested that the decision be made without oral argument at which, if held, such matters may have been inquired into by this Court.

The law of the State of Utah[2] gives to any member of the State Bar complained of in such proceedings the right to notice of the proceedings, the opportunity to defend by the introduction of evidence and the examination of witnesses called against him, the right to be represented by counsel, the right to a public hearing if requested, and the right to have witnesses subpoenaed to appear and testify and produce evidence for him, none of which he availed himself.

After three years since the proceedings were initiated, appellant now asks this Court to remand the case for a new hearing before the Bar. We believe that appellant's lack of response in the proceedings below does not merit such relief and we so rule.

As to appellant's request that this Court reverse the Bar Commission's findings, we note previous declarations of this Court that, although it is the prerogative and responsibility of the Court to make the ultimate decision in this case, the Court will look indulgently upon the findings and recommendations of the Board as advisory, and will be inclined to act in accordance therewith and adopt such findings unless it appears that the Commission has acted arbitrarily or unreasonably, or unless those

---

1. U.C.A.1953, Sec. 78–51–19.

2. U.C.A.1953, Sec. 78–51–16.

findings were not supported by substantial evidence.[3]

The initial complaint filed by the Ethics and Discipline Committee contained four counts. The Board of Bar Commissioners found no violations of the Canons of Professional Responsibility with respect to the allegations of Count III.

■ Count I relates to allegations of failure to provide copies of proposed findings, judgments and orders in the Mitchell divorce case to opposing counsel, Glenn Mecham, and in preparing documents for signature by the court containing terms substantially different than those ordered by the court, "as reflected by the minute entry therein." Minute entries are not court orders but constitute merely the clerk's recording of proceedings before and rulings by the court. If copies of minute entries are not furnished to counsel, and they normally are not, it is not surprising that a prepared order may not be in conformity with the minute entry. It is, of course, a lawyer's duty and responsibility to prepare an order that accurately reflects the court's ruling, and a willful failure to do so would be a violation of professional ethics.

The main item of controversy under Count I is an order of Judge Christoffersen, the trial judge in the Mitchell divorce case, dated March 17, 1977, and a subsequent order on an order to show cause with respect thereto. Emphasis was made in the proceedings and findings that the order of March 17, 1977, was not mailed to Mecham, although a certificate of mailing signed by a secretary certifies that a copy of such order was mailed to Mecham on March 15, 1977. The secretary may have failed to do so but her failure can hardly be a basis for an alleged breach of professional responsibility on the part of her employer.

Rule 2.9(b) of the Rules of Practice of the district and circuit courts provides that copies of proposed findings, judgments and/or orders shall be served on opposing counsel before being presented to the court for signature unless the court otherwise orders, to which notice of objections thereto are to be submitted to the court and counsel within five days after service. In practice, this rule is by no means always adhered to, sometimes because the court directs otherwise and sometimes because counsel fail to comply. Frequently, such pleadings are submitted to opposing counsel for approval as to form before submission to the court; frequently, they are sent to the court with a request that they be held for five days for the filing of objections; and frequently, the failure to comply is met by motions to amend or objections that are then resolved by the court. Judges who sign such documents when not submitted pursuant to this rule lend their endorsement to such violations. As Justice Crockett once wrote:[4]

No one lives in a vacuum. It is sometimes said that "in the absence of angels, we must get along with human beings." This includes their interests as well as their varying degrees of wisdom and folly.

Judges and lawyers are not excluded from the scope of this statement. Rules of procedure are violated daily in our courts but fortunately the judicial processes can and do deal with this problem. Intentional and repeated violations of procedural rules are not to be condoned. We have some reservations about whether the Board's finding that appellant's noted violations of Rule 2.9(b) were intentional, and whether the Board's finding that the submission of orders by appellant in terms substantially different from those ordered by the court was "knowing and willful" are supported by substantial evidence.

But significant findings with respect to Counts I and IV are supported by substantial evidence. Count II also relates to the order of March 17, 1977, which by its terms

---

**3.** *In Re Macfarlane*, 10 Utah 2d 217, 350 P.2d 631 (1960); *In Re Fullmer*, 17 Utah 2d 121, 405 P.2d 343 (1965); *In Re Bridwell*, 25 Utah 2d 1, 474 P.2d 116 (1970); *In Re Badger*, 27 Utah 2d 174, 493 P.2d 1273 (1972); *In Re Hansen*, 584 P.2d 805 (1978); *In Re Blackham*, Utah, 588 P.2d 694 (1978).

**4.** *Jenkins v. Bishop*, Utah, 589 P.2d 770 (1978).

as drafted by appellant directed Gary Mitchell to redeem property being sold under a trust deed sale, to prevent, on penalty of contempt of court, the trustee's sale of that property "by whatever means he may need to employ, including being the highest bidder at the sale," and if he did not avoid the sale to post a supersedeas bond in the amount of $150,000, "in addition to the contempt penalty heretofore imposed." Lacking the financial ability to do so, it was impossible for Mitchell to comply with such order. It is hard to understand why such an order was ever entered.

The trustee's sale was not avoided and appellant filed a motion for an order to show cause for contempt for Mitchell's failure to comply with the March 17 order. The motion contained the statement that Mitchell's act was willful,

> ... counsel for plaintiff having talked to the bank and having verified the fact that the money was available to Mr. Mitchell at any time he would make application for it.

Testimony included in the record discloses that not only had Mitchell been turned down by the bank in question when he applied for a loan, but also that DeVere Watkins, the bank official identified by appellant as verifying the availability of money to Mitchell, denied ever having so advised appellant and did so not only at the hearing before the Bar Committee, but also in testimony at the order to show cause hearing on April 11, 1977, before Judge Christoffersen at which appellant had the opportunity to cross-examine Watkins about that matter. In his letter to the Bar Commission of December 5, 1977, appellant stated he was convinced Watkins either did not remember the conversation or did not place it in its proper context, which seems highly unlikely since by the time Watkins took over management of the bank on December 1, 1976, he had been advised the loan was in default and had been told by the bank's legal counsel that a loan renewal was not to be made, and Mitchell had been unable to obtain a commitment from Watkins that refinancing would be made available to him.

Based upon this evidence, we find that the Board of Bar Commissioners' finding, to the effect that the foregoing statement made by appellant was false and known by appellant to be false when made, was not arbitrary or capricious but, to the contrary, was based upon substantial evidence.

■ The allegations against appellant in Count IV of the complaint relate to a proceeding in a related case in which attorney Dale Browning was plaintiff and the Mitchells were defendants, with Mr. Mitchell being represented by attorney Glenn Mecham. Browning had sold land to the Mitchells on which they had built their home, the sale of which was involved in the proceedings discussed under Count II. Browning was asserting a claim for a balance of some $3,500 as being due on the purchase of the lot, together with attorney's fees. Following the trustee's sale of the Mitchell home, an amount in excess of $15,000 was left remaining to the Mitchells, which was in time deposited with the clerk of the court. Still to be resolved on appeal was a dispute between the Mitchells as to the division of these proceeds.

On April 26, 1977, attorney Dale Browning obtained an order to show cause from Judge Calvin Gould directing the Mitchells to appear on May 9, 1977, to show cause why the proceeds remaining from the sale of the home should not be held, or a sufficient amount thereof, to satisfy the Browning claim, pending resolution of that claim. On that same day, appellant contacted Judge Gould and objected to the order and arranged for a meeting with Judge Gould at 4:00 p. m. Browning was not available, and at appellant's request, Browning's associate, Timothy Blackburn, who knew very little about the case, appeared with appellant before Judge Gould. No one else was present and neither of the Mitchells nor Glenn Mecham were advised of the meeting; nor was Judge Gould advised by appellant that he did not represent Mr. Mitchell or that the Mitchell divorce case was then before the Supreme Court.

It was agreed by appellant and Blackburn before Judge Gould that enough money could be retained to satisfy the Browning claim, but no mention was made of Browning's claim for attorney's fees. Thereafter, appellant prepared another order to show cause in the Browning case providing for a hearing on May 9, 1977, with respect to a retention of the proceeds or sufficient thereof to satisfy the Browning claim and added the provision that $3,524.04 of the funds should be held and the balance paid to defendant therein, Lola H. Mitchell (appellant's client), and that the county clerk and county treasurer were ordered to disburse the funds as set forth in the order. In preparing the order, the name of Dale Browning and his law firm appeared at the top thereof as the attorney preparing the order. Appellant then presented the order, not to Judge Gould, but to Judge Ronald Hyde, who signed the order on April 28, 1977.

Testimony was given at the hearing before the Bar Committee that the use of Browning's name as the party preparing the order was neither authorized nor discussed; that Blackburn did not appear with appellant before Judge Hyde nor was it agreed by him that anyone other than Judge Gould should sign it; and that up to the time Judge Hyde signed the order, there had been no discussion between the two judges about the order. Notwithstanding these facts, appellant in his letter of December 5, 1977, stated that because Browning was out of town, Blackburn had met with him in Judge Hyde's chambers, and that in view of the fact that Judge Gould had left, "but had discussed the matter with Judge Hyde," Judge Hyde then signed the order, with Blackburn, Judge Gould and Judge Hyde all understanding "the nature of the situation."

In discussing this incident in his brief, appellant stated that since Browning had tied up Mrs. Mitchell's funds without posting bond, at the hearing before Judge Gould it was determined that Browning

"should post bond." He adds that "by inadvertence, the secretary inscribed the name of Browning, rather than Judd, on the document." In the order prepared by appellant and signed by Judge Hyde, no mention of the posting of any bond is made.

In its findings, the Board of Bar Commissioners found the facts as they were testified to in the hearing before the Hearing Committee, as summarized above, together with a finding that the order prepared by appellant and signed by Judge Hyde was not submitted to opposing counsel prior to or contemporaneous with the obtaining of the court's signature.

We find the evidence substantially supports those findings, that such findings are not arbitrary and capricious, and that such acts constituted violations of the indicated canons of ethics.[5]

In conclusion, we note that much of appellant's brief is devoted to discussion of matters occurring in the divorce proceedings in the Mitchell case and appellant's comments with respect thereto, none of which are included in the record now before this Court. Other allegations contained in appellant's brief do not merit comment. Appellant's assertion that the evidence amply demonstrates that only his "neglect and indiscretion were involved" does not persuade us that the findings of the Board of Bar Commissioners should not be adopted.

We further find that the recommendation of the Board that appellant be suspended from the practice of law for a period of two months is not overly harsh under the facts and circumstances of the case and we approve that recommendation and so order.

MAUGHAN, C. J., and HALL, J., concur.

OAKS, Justice: (concurring specially).

I concur in the result reached by the Court, but cannot concur in all portions of its opinion.

---

5. Rule IV, Canon 1, DR 1–102(A)(5) and (6); Canon 7, DR 7–102(A)(1); DR 7–106(C)(7) and DR 7–110(B)(2) and (3) of the Revised Rules of Professional Conduct of the Utah State Bar.

Count I of the complaint filed by the Ethics and Disciplinary Committee charged and the Board of Bar Commissioners found, *inter alia*, that appellant prepared findings, judgments, and orders and had them signed by the judge without discussing their contents with or providing copies to opposing counsel. The Bar Commissioners found that this conduct violated District Court Rule 2.9(b) and the common practice and courtesy among attorneys in the community. Appellant was further found to have knowingly and willfully prepared an order containing terms substantially different from those ordered by the court and then to have distributed copies of the order to members of the Utah Supreme Court during oral argument, although the order was then subject to opposing counsel's objection and was not a part of the record on appeal. As a result of the conduct charged under Count I, the Bar Commissioners found that appellant had violated Canon 1, DR 1-102(A)(4), (5) and (6); and Canon 7, DR 7-102(A)(5) and DR 7-106(C)(5) and (7).[1] In contrast to the Court's opinion, which excuses or at least does not censure this conduct, I would sustain the Bar Commissioners' findings and conclusions under Count I.

Under Count II of the complaint, the Bar Commissioners found that appellant, in a motion for an order to show cause and later in a court hearing, made a statement that was false and known by appellant to be false when he made it. As noted in the Court's opinion, this finding is supported by substantial evidence in the record. I agree with the Bar Commissioners' conclusion that appellant's conduct under Count II violated Canon 1, DR 1-102(A)(4), (5) and (6); and Canon 7, DR 7-102(A)(5). I am unable to concur in the Bar Commissioners' conclusion that this conduct also violated Canon 7, DR 7-102(A)(1) and (4) and DR 7-106(C)(2), but in view of the gravity of the other violations, I do not consider that exception to undercut the Bar Commissioners' disciplinary recommendation.

Under Count IV, with one exception,[2] I concur in the Court's opinion that the findings of the Board of Bar Commissioners are supported by substantial evidence in the record, and I concur that appellant's conduct described there violated the following canons and disciplinary rules: Canon 1, DR 1-102(A)(5) and (6); Canon 7, DR 7-106(C)(7) and DR 7-110(B)(2) and (3).

On the basis of findings under Counts I, II and IV of the Ethics and Disciplinary Committee's complaint, I join with the Court in its decision to suspend the appellant from the practice of law for a period of two months, as the Board of Bar Commissioners recommended.

### APPENDIX

DR 1-102  Misconduct.

(A) A lawyer shall not:

\*     \*     \*     \*     \*     \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 7-102  Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

\*     \*     \*     \*     \*     \*

(4) Knowingly use perjured testimony or false evidence.

---

1.  The Disciplinary Rules (DR) cited herein appear in the Appendix at the conclusion of this opinion.

2.  I cannot concur in the finding that appellant's conduct violated DR 7-102(A)(1), since I can find no evidence in the record that he took any action that served "*merely* to harass or maliciously injure another." (Emphasis added.)

(5) Knowingly make a false statement of law or fact.

DR 7–106   Trial Conduct.

\* \* \* \* \* \*

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

\* \* \* \* \* \*

(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.

\* \* \* \* \* \*

(5) Fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of his intent not to comply.

\* \* \* \* \* \*

(7) Intentionally or habitually violate any established rule of procedure or of evidence.

DR 7–110   Contact with Officials.

\* \* \* \* \* \*

(B) In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:

\* \* \* \* \* \*

(2) In writing if he promptly delivers a copy of the writing to opposing counsel or to the adverse party if he is not represented by a lawyer.

(3) Orally upon adequate notice to opposing counsel or to the adverse party if he is not represented by a lawyer.

STEWART, J., does not participate herein.

HOWE, J., having disqualified himself, does not participate herein.

CROFT, District Judge, sat.